Client Reference №: GMP-SMD/H2M/636B-06142024
Reference NCNDA #: GMP/SMD-NCNDA-06142024
JVA NUMBER/NAME: GMP SMD HAPPY2MN

# Joint Venture Agreement

This Joint Venture Agreement ("Agreement"), made on __7/19/2024__, by and between **Global Monetization Partners, LLC., (GMP)** with registration number L24000254984 and legal registered address of 1100 Brickell Bay Drive #310957, Miami, FL. 33131 **and SIERRA MADRE DEVELOPMENT, LLC., (SMD),** a New Mexico, USA company with registration number #2899011 with legal registered physical address of **1208 Candelaria Rd NW, APT B4, Albuquerque, NM 87107 with legal registered mailing address 4900 Richmond Square Drive, Suite 300, Oklahoma City, OK 73118, with Dr. Stephen Henry Van Hauen, JR.,** personal mailing address 19512 Skyler's Drive, Edmond, Oklahoma 73012, USA.

The parties are hereinafter sometimes referred to together as the "Joint Venturers" or the "Parties" and individually as a "Joint Venturer" or "Party."

The Parties wish to establish a Joint Venture for the purpose set forth below (the "Joint Venture"); and

The Parties wish to enter into an agreement to carry out the purpose of the Joint Venture and to define the respective rights and obligations of the Parties with respect to the Joint Venture.

Therefore, in consideration of the mutual promises, covenants, warranties and conditions herein, the Joint Venturers agree as follows:

**Name.** The parties hereby form and establish a Joint Venture to be conducted under the name of **GMP SMD HAPPY2MN,** a JOINT VENTURE, (hereinafter referred to as the "Joint Venture"). The Joint Venturers agree that the legal title to the Joint Venture property and assets, including the Joint Venture itself, shall remain in the name of the Joint Venture.

**Place of Business & Term.** The principal place of business of the Joint Venture shall be located Miami, Florida. The term of the Joint Venture shall commence on the execution date hereof and shall continue until __August 19, 2029__ consisting of a five-year (5 year) and one month term that will apply to this agreement and renew automatically for another five-year (5 year) and one month term with the last date of execution of any new contracts and or renewals and or rolls and extensions provided between the Joint venture partners and or the principal signatories on any Credit Facilities Agreements, Revolving Credit Facilities Agreements, Financing Agreements, Securities Agreements, Equity Ownership and Funding Agreement (EOAFA), Special Purpose Vehicle, (SPV), Asset Manager/Management Agreements (AMA), Power of Attorney (POA), Purchase/Sale, Cash Advances, Funds Held in Reserve, Buy Back, Monetization and Trade contracts. However, that the Joint Venture shall be dissolved prior to such date upon the sale or disposal of the Joint Venture and the payment or satisfaction of all debts of the Joint Venture.

**Purpose.** The Joint Venturers form this Joint Venture to: Leverage, Monetize and/or Trade a 160 Acre Parcel of Land in connection with a trade for **PROFITS as noted below.**

**THE HAPPY 2 MINE (H2M) CLAIM (SERIAL NUMBER: AMC413582) REGISTERED AS AN 160-ACRE PUBLIC LAND SITE LOCATED IN PINAL COUNTY, ARIZONA, APPROXIMATELY 25 MILES EAST OF THE CITY OF ELOY, ARIZONA.**

JV Partner      Page **1 of 11**     JV Partner

---

Client Reference №: GMP-SMD/H2M/636B-06142024
Reference NCNDA #: GMP/SMD-NCNDA-06142024
JVA NUMBER/NAME: GMP SMD HAPPY2MN

**THE LEGAL DESCRIPTION OF THE EXPLORATION PROPERTY IS: MERIDIAN 14, TOWNSHIP 7S, RANGE 12 EAST, SECTION 33, QUARTER SECTION NW.**

**HAPPY 2 MINE CONSIST OF EIGHT PARCELS OF 20 ACRES EACH TOTALING 160-ACRE PARCEL, VALUE USD $636,990,675,860 (SIX HUNDRED THIRTY-SIX BILLION NINE HUNDRED NINTY MILLION SIX HUNDRED SEVENTY-FIVE THOUSAND EIGHT HUNDRED AND SIXTY US DOLLARS) FOR LEVERAGE, MONETIZE AND TRADE CONTRACTS OF FIVE YEARS WITH OPTION FOR ANOTHER 5 YEAR TERM WITH ROLLS AND EXTENSIONS (R&E).**

To the extent set forth in this Agreement, each of the Joint Venturers shall own a divided fractional part in the business set forth below. The Joint Venture shall not engage in any other business or activity without the written consent of the Joint Venturers.

**Capital.** Separate capital accounts shall be maintained for each Joint Venturer and shall consist of the sum of its contributions to the capital of the Joint Venture plus its share of the profits of the Joint Venture.

The contributions from each of the Joint Venturers, for the purpose of this Joint Venture, is the sum set after the name of each Joint Venturer as follows:

Global Monetization Partners, LLC., (GMP)     $0.00
SIERRA MADRE DEVELOPMENT, LLC., (SMD) **HAPPY 2 MINE (H2M) CLAIM (SERIAL NUMBER: AMC413582) REGISTERED AS AN 160-ACRE PUBLIC LAND SITE LOCATED IN PINAL COUNTY, ARIZONA, APPROXIMATELY 25 MILES EAST OF THE CITY OF ELOY, ARIZONA. THE LEGAL DESCRIPTION OF THE EXPLORATION PROPERTY IS: MERIDIAN 14, TOWNSHIP 7S, RANGE 12 EAST, SECTION 33, QUARTER SECTION NW. HAPPY 2 MINE CONSIST OF EIGHT PARCELS OF 20 ACRES EACH TOTALING 160-ACRE PARCEL, BACKED BY A NI 43-101 FEASIBILITY STUDY VALUE USD $636,990,675,860.00**

**Percentage Interest In The Joint Venture.** The respective percentage interest in the Joint Venture owned by each Joint Venturer, respectively, is as follows:

Global Monetization Partners, LLC., (GMP)     10
SIERRA MADRE DEVELOPMENT, LLC., (SMD)     90

**Profits.** The net profits as they accrue for the term of this Agreement, or so long as the Joint Venturers are the owners in common of the business interest, shall be distributed between the Joint Venturers, based on the respective percentage interest in the Joint Venture owned by each Joint Venturer as follows:

Global Monetization Partners, LLC., (GMP)     50
SIERRA MADRE DEVELOPMENT, LLC., (SMD)     50

**Expenses of Venture.** All expenses of losses and disbursements in acquiring, holding, obtaining loans fees and protecting the business interest and the net profits shall, during the period of the venture, be paid by the **SIERRA MADRE DEVELOPMENT, LLC., (SMD).** Global Monetization Partners, LLC., (GMP), shall not be responsible for any expenses and or fees associated with **HAPPY 2 MINE (H2M) CLAIM (SERIAL NUMBER: AMC413582) REGISTERED AS AN 160-ACRE PUBLIC LAND**



Client Reference №: GMP-SMD/H2M/636B-06142024
Reference NCNDA #: GMP/SMD-NCNDA-06142024
JVA NUMBER/NAME: GMP SMD HAPPY2MN

**SITE LOCATED IN PINAL COUNTY, ARIZONA, APPROXIMATELY 25 MILES EAST OF THE CITY OF ELOY, ARIZONA. THE LEGAL DESCRIPTION IS: MERIDIAN 14, TOWNSHIP 7S, RANGE 12 EAST, SECTION 33, QUARTER SECTION NW. HAPPY 2 MINE CONSIST OF EIGHT PARCELS OF 20 ACRES EACH TOTALING 160-ACRE PARCEL, BACKED BY A NI 43-101 FEASIBILITY STUDY VALUE USD $636,990,675,860.00,** leverage, monetization and trade account, other than their on-banking fees.

**Duties of Joint Venturers.** The duties of Global Monetization Partners, LLC., (GMP) are: Acting as the Managing Consulting Firm, Asset Management, Trade Management and Liaison Firm for the purposes of securing buyers, sellers, monetizers, lenders, bankers, trade management companies, trader and trade platforms, for facilitating and submitting all required and necessary documents such as Know Your Client (KYC), Client Information Sheet (CIS), Letter of Intent (LOI), Profit Participation Agreements (PPA)/PayOrders, Joint Venture Partnership & Private Funds Investment Agreements, Joint Venture Partnership & Private Partnership Agreements, Joint Venture Profit Sharing Agreement with Management Groups, Deed of Agreement, Deed of Assignment, Credit Facilities Agreements, Revolving Credit Facilities Agreements, Financing Agreements, Securities Agreements, Equity Ownership and Funding Agreement (EOAFA), Special Purpose Vehicle, (SPV), Asset Manager/Management Agreements (AMA), Power of Attorney (POA), NI-43101, Purchase/Sale, Cash Advances, Funds Held in Reserve, Buy Back, Monetization and Trade Contracts along with any other required documents to place this **HAPPY 2 MINE (H2M) CLAIM (SERIAL NUMBER: AMC413582) REGISTERED AS AN 160-ACRE PUBLIC LAND SITE LOCATED IN PINAL COUNTY, ARIZONA, APPROXIMATELY 25 MILES EAST OF THE CITY OF ELOY, ARIZONA. THE LEGAL DESCRIPTION IS: MERIDIAN 14, TOWNSHIP 7S, RANGE 12 EAST, SECTION 33, QUARTER SECTION NW. HAPPY 2 MINE CONSIST OF EIGHT PARCELS OF 20 ACRES EACH TOTALING 160-ACRE PARCEL, BACKED BY A NI 43-101 FEASIBILITY STUDY VALUE USD $636,990,675,860.00,** packaged into a leveraging, monetization and or trade platform. Global Monetization Partners, LLC., (GMP) to be the official liaison to coordinate and communicate between Attorneys/Providers/Receivers/Asset Managers/ Lenders/Bankers/Monetizers/Traders/Trade Platforms.

The duties of **SIERRA MADRE DEVELOPMENT, LLC., (SMD)**, are: To facilitate and execute all required and necessary documents, Know Your Client (KYC), Client Information Sheet (CIS), Profit Participation Agreements (PPA)/PayOrders, Joint Venture Partnership & Private Funds Investment Agreements with Management Groups, Deed of Agreement, Deed of Assignment, Credit Facilities Agreements, Revolving Credit Facilities Agreements, Financing Agreements, Securities Agreements, Equity Ownership and Funding Agreement (EOAFA), Special Purpose Vehicle, (SPV), Asset Manager/Management Agreements (AMA), Power of Attorney (POA), NI-43101, Purchase/Sale, Cash Advances, Funds Held in Reserve, Buy Back, Monetization and Trade Contracts along with any other required documents to place the **HAPPY 2 MINE (H2M) CLAIM (SERIAL NUMBER: AMC413582) REGISTERED AS AN 160-ACRE PUBLIC LAND SITE LOCATED IN PINAL COUNTY, ARIZONA, APPROXIMATELY 25 MILES EAST OF THE CITY OF ELOY, ARIZONA. THE LEGAL DESCRIPTION IS: MERIDIAN 14, TOWNSHIP 7S, RANGE 12 EAST, SECTION 33, QUARTER SECTION NW. HAPPY 2 MINE CONSIST OF EIGHT PARCELS OF 20 ACRES EACH TOTALING 160-ACRE PARCEL, BACKED BY A NI 43-101 FEASIBILITY STUDY VALUE USD $636,990,675,860.00,** into leveraging and/or monetization and trade.

As the INVESTOR and sender of the **HAPPY 2 MINE (H2M) CLAIM (SERIAL NUMBER: AMC413582) REGISTERED AS AN 160-ACRE PUBLIC LAND SITE LOCATED IN PINAL COUNTY, ARIZONA, APPROXIMATELY 25 MILES EAST OF THE CITY OF ELOY,**

JV Partner    Page 3 of 11   JV Partner

Client Reference №: GMP-SMD/H2M/636B-06142024
Reference NCNDA #: GMP/SMD-NCNDA-06142024
JVA NUMBER/NAME: GMP SMD HAPPY2MN

**ARIZONA. THE LEGAL DESCRIPTION IS: MERIDIAN 14, TOWNSHIP 7S, RANGE 12 EAST, SECTION 33, QUARTER SECTION NW. HAPPY 2 MINE CONSIST OF EIGHT PARCELS OF 20 ACRES EACH TOTALING 160-ACRE PARCEL, BACKED BY A NI 43-101 FEASIBILITY STUDY VALUE USD $636,990,675,860.00,** shall be ready, willing and able to **fully assign and place a lien and UCC filing upon the said asset** to Global Monetization Partners, LLC., (GMP) when requested to do so for the purpose of leveraging, monetizing and trading the **HAPPY 2 MINE (H2M) CLAIM RESOUCE VALUATION USD $636,990,675,860 (SIX HUNDRED THIRTY-SIX BILLION NINE HUNDRED NINTY MILLION SIX HUNDRED SEVENTY-FIVE THOUSAND EIGHT HUNDRED AND SIXTY US DOLLARS)** for Profits by proceeding to secure a wrap Insurance, reinsurance, with or without Bonds, credit facilities, non-recourse monetization and trade contract with designated monetization and trading platform provided by Global Monetization Partners, LLC., (GMP). Sender shall make sure no liens or blocks have been placed upon said **HAPPY 2 MINE (H2M) CLAIM** and are all good, clean and cleared funds of non-criminal origin, non-terrorist activities and are without any traces of illegality, any restrictions, or encumbered and are lawfully obtained from lawful commercial activities.

**Powers of Joint Venturers.** The following powers may be exercised only upon the consent of the Joint Venturers:
   (a) The power to borrow money on the general credit of the Joint Venture in any amount, or to create, assume, or incur any indebtedness to any person or entity;
   (b) The power to make loans in any amount, to guarantee obligations of any person or entity, or to make any other pledge or extension of credit.

**Confidential Information.** "Confidential Information" means nonpublic information that (a) the disclosing Party designates as confidential, or (b) information which, under the circumstances surrounding disclosure, ought to be treated as confidential. Each Party acknowledges that in the course of the activities of the Contract(s), Agreement(s), Association(s) and/or conversation(s) each Party will or may receive from the other Party(ies) hereto, directly or indirectly, certain valuable, private, confidential, proprietary, business and technical information, including the conducting of Contract Business, and the identity of certain confidential sources, patents, copyrights, ideas, methods, process of finance, investment capital, funding of loans, bank/security instrument, **HAPPY 2 MINE (H2M) CLAIM**, monetization and trade information or contacts, bonds and or notes, banking sources and/or securities company sources and many others not listed, all of which are the individual, intrinsic, private, proprietary property of the disclosing party and not for any others without the prior written permission of the disclosing Party.

**Non-Circumvention.** The Parties shall respect the integrity and tangible value of this Transaction and shall agree not to circumvent any of the Parties in this Transaction, or any future Transactions under the above-mentioned Transaction code/Reference Code and shall apply to any following Transaction or New Agreement between the Parties. Each of the Parties to this Agreement accept and understand that any overt or covert action of circumvention of the respected process shall constitute a serious trespass of trust and legality and will be subject to judicial action, recompense and possible punitive damages, as so awarded by legal process. The names, identities, bank coordinates, securities and other identifying information of persons or entities that are a party to this transaction, contained herein or learned hereafter, shall be a Corporate Trade Secret that shall not be disseminated or circumvented other than as provided for herein, or as allowed under applicable law.

**Non-Disclosure and Confidentiality.** The Parties shall not disclose to any third party(s) (except their bankers and/or attorneys), either directly or indirectly, the fact or nature of their respective professional and business association, or any transaction (or transactional information) in which the Parties are/were/or may

JV Partner   Page 4 of 11  JV Partner  

Docusign Envelope ID: ACA9B781-A785-404C-8912-D174CE1E56C3

**Client Reference №: GMP-SMD/H2M/636B-06142024**
**Reference NCNDA #: GMP/SMD-NCNDA-06142024**
**JVA NUMBER/NAME: GMP SMD HAPPY2MN**

be jointly involved, without the prior written authority for the other Party and that all names, addresses, telephone numbers, telex/fax numbers, email addresses, or any other applications, (apps), medium or contact or the identity of such value to the respective Party which has expended time and money to develop its contact system except as may be required by law or court order. Under no circumstances, either during or after the tenure of the formal associations of the above Parties, shall any Party violate the integrity and legality of the contact system without first securing full written authority from the other Parties to do so. Any authority given must require continued fee protection as well as automatic receipt of copies of all future correspondence with the referred partners.

**Confidentiality**. The Parties consider their sources of information 'assets', and their methods of acquiring those 'assets' as trade secrets. The Parties shall maintain the confidentiality and shall not disclose to any outside additional "Third Party" any confidential information. "Third Party" means any associates, individual, business, trust, estate, partnership, limited liability company, joint venture or any other legal, commercial or governmental entity, including but not limited to bankers, credit facilitators, securities facilitators, asset managers, monetizers, traders, brokers, agents or other representatives that are not an integral part of this agreement and the forthcoming Trade Agreements/Contracts. Any confidential information disclosed shall be protected by Recipient for a period of five (5) years from the conclusion of any discussions or negotiations subject to the Agreement, and/or any and all dealings between the parties. Recipient will also use the same degree of care, but not less than a reasonable degree of care, to prevent the unauthorized use, disclosure, dissemination or publication of such information, as Recipient uses to protect its own confidential information of a like nature from unauthorized use, dissemination, or publication.

The Parties shall not use confidential information of the Parties for any purpose beyond the purpose of this Agreement and the associated forthcoming Trade Agreements/Contracts.

The International Chamber of Commerce (ICC), rules of non-circumvention and non-disclosure of five-year (5 year) term will apply to this agreement and renew automatically for another five-year term with last date of execution of any new contracts and or renewals and extensions.

**Treatment of Proprietary and Confidential Information.**

1. In connection with the performance of this Agreement, each Party contemplates the disclosure by it of certain Confidential Information to the other Party. Each Party considers its Confidential Information to be an asset of substantial commercial value, having been developed at considerable expense, but will disclose such information to the other Party under the terms and conditions of this Agreement.

   (a). During the Term and continuing thereafter for 5 year(s) from the termination or expiration of the Agreement, the Party receiving Confidential Information ("Receiving Party") from the disclosing Party ("Disclosing Party") shall (i) treat all Confidential Information disclosed by the Disclosing Party as secret and confidential and shall not disclose all or any portion of the Confidential Information to any other Person; (ii) not use any of such Confidential Information except in the performance of the Receiving Party's covenants and obligations or otherwise as contemplated under this Agreement, and (iii) restrict access to Confidential Information to the Receiving Party's employees (including contractors, accountants and counsel and similar representatives) who have a need to know such information in connection with the performance of the Receiving Party's obligations and covenants under this Agreement and shall be responsible to ensure that such employees maintain the terms of confidentiality and nonuse as required in this Agreement.

JV Partner      Page 5 of 11     JV Partner 

Docusign Envelope ID: ACA9B781-A785-404C-8912-D174CE1E56C3

**Client Reference №: GMP-SMD/H2M/636B-06142024**
**Reference NCNDA #: GMP/SMD-NCNDA-06142024**
**JVA NUMBER/NAME: GMP SMD HAPPY2MN**

2. Notwithstanding anything to the contrary herein, Confidential Information shall not include any information that: (a) is presently in the Receiving Party's possession, provided that such information has not been obtained from the Disclosing Party and that such possession can be demonstrated by the Receiving Party's written records; (b) is, or becomes, generally available to the public through no act or omission of the Receiving Party; (c) is received by the Receiving Party in written form from a third party having no binding obligation to keep such information confidential; or (d) is required to be disclosed by law, upon the advice of legal counsel.

3. Specific Confidential Information shall not be deemed to be available to the public or in the possession of the Receiving Party merely because it is embraced by more general information so available or in said Receiving Party's possession, nor shall a combination or aggregation of features which form confidential information be deemed to be non-confidential merely because the individual features, without being combined or aggregated, are non-confidential.

4. Each of the Parties hereby agrees that all written or other tangible forms of Confidential Information (including any materials generated by the Receiving Party related to any Confidential Information) shall be and remain the property of its owner and shall be promptly returned to the owner upon the written request of the owner.

5. Neither the Agreement nor the disclosure of any information by the Disclosing Party shall be deemed to constitute by implication or otherwise, a vesting of any title or interest or a grant of any license, immunity or other right to the Receiving Party with regard to the Confidential Information. Additionally, except as expressly provided in this Agreement, the execution of the Agreement shall not operate, directly or indirectly, to grant to either Party any rights under any patent, trade secret or know-how now or hereafter owned by or licensed to the other Party.

6. Each Party warrants that it is the rightful owner of the Confidential Information to be disclosed under this Agreement and that it has the lawful right to make such disclosure.

7. In the event that the Receiving Party or any of its representatives are requested or required to disclose Confidential Information pursuant to a subpoena or an order of a court or government agency, the Receiving Party shall (a) promptly notify the Disclosing Party of the existence, terms and circumstances surrounding the governmental request or requirements; (b) consult with the Disclosing Party on the advisability of taking steps to resist or narrow the request; (c) if disclosure of Confidential Information is required, furnish only such portion of the Confidential Information as the Receiving Party is advised by counsel is legally required to be disclosed; and (d) cooperate with the Disclosing Party in its efforts to obtain an order or other reliable assurance that confidential treatment be accorded to that portion of the Confidential Information that is required to be disclosed.

   Because money damages may not be a sufficient remedy for any breach of this Section of the Agreement by the Receiving Party, the Disclosing Party shall be entitled to seek equitable relief, including injunction and specific performance, as a remedy for any such breach of this Section. Such remedy shall not be deemed to be the exclusive remedy for a breach of this Section of the Agreement by the Receiving Party, but shall be in addition to all other remedies available at law or equity to the Disclosing Party. In the event of litigation relating to the Agreement, if a court of competent jurisdiction determines that the Receiving Party has breached this Section of the Agreement, then the Receiving Party shall be liable and pay to the Disclosing Party the reasonable

JV Partner           Page 6 of 11          JV Partner 

**Client Reference №: GMP-SMD/H2M/636B-06142024**
**Reference NCNDA #: GMP/SMD-NCNDA-06142024**
**JVA NUMBER/NAME: GMP SMD HAPPY2MN**

attorneys' fees, court costs and other reasonable expenses of litigation, including any appeal therefrom. The Receiving Party further agrees to waive any requirement for the posting of a bond in connection with any such equitable relief.

**Non-Interference Clause.** The parties **SIERRA MADRE DEVELOPMENT, LLC., (SMD) and Global Monetization Partners, LLC., (GMP).**, to this agreement understand and agree to the following (a-d).
  **(a) Non-Interference with Existing Agreement**: The parties agree that any third-party agreements entered into by either party shall not alter, invalidate, dissolve, or impair this Joint Venture Agreement. This Joint Venture Agreement shall remain in full force and effect regardless of any third-party contracts, agreements, or arrangements.
  **(b) Future Agreements**: The parties further agree that any future business agreements between the parties shall not be affected by any third-party agreements. This Joint Venture Agreement and any future agreements between the parties shall be interpreted and enforced independently of any third-party obligations.
  **(c) Primacy of Agreement**: In the event of any conflict between this Joint Venture Agreement and any third-party agreement, the terms of this Joint Venture Agreement shall prevail to the extent necessary to preserve the intent and enforceability of this Joint Venture Agreement.
  **(d) Acknowledgment**: Both parties acknowledge and agree that this clause is essential to the underlying agreement and reflects the mutual understanding that this Joint Venture Agreement, as well as any future agreements between the parties, are to be protected from any third-party influence or interference.

**No Liability to Third Parties.** The debts, obligations and liabilities of either Joint Venturer, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of such Joint Venturer, and no other Party shall be obligated for any such debt, obligation or liability of such Joint Venturer solely by reason of being a party to this Agreement or an equity holder of a JV Company.

**Deadlock.** In the event the Joint Venturers are divided on a material issue and cannot agree on the conduct of the business and affairs of the Joint Venture, then a deadlock between the Joint Venturers shall be deemed to have occurred. Upon the occurrence of a deadlock, one Joint Venturer (hereinafter referred to as the "Offeror") may elect to purchase the Joint Venture interest of the other Joint Venturer (hereinafter referred to as the "Offeree") at a price calculated as the Offeree's percentage interest in a total purchase price for all of the assets of the Joint Venture. The Offeror shall notify the Offeree in writing of the offer to purchase, stating the total purchase price for all of the assets of the Joint Venture, and the price offered for the Offeree's Joint Venture interest expressed as the Offeree's percentage interest in the Joint Venture assets multiplied by the total purchase price for all of the assets of the Joint Venture. The Offeree shall have the right to buy the interest of the Offeror at the designated price and terms, or to sell the Offeree's interest to the Offeror at the designated price and terms, whichever the Offeree may elect. The offer, when made by the Offeror, is irrevocable for thirty (30) days. The Offeree shall have ten (10) days from the receipt of such offer to make its election, that is, either to buy such interest of the Offeror or to sell its own interest, which shall be made in writing executed by the Offeree and stating the nature of the election. A Joint Venturer which is obligated to purchase the interest of another Joint Venturer pursuant to the provisions hereof shall have twenty (20) days from the date of receipt of the written election from such other Joint Venturer to pay the designated price and satisfy the terms of such purchase. Should the Joint Venturer who has received an offer to sell or buy fail to make the election required herein in a timely fashion, then such non-responding party shall be deemed to have elected and agreed to sell or buy, as the case may be, according to the terms of the offer.

JV Partner           Page 7 of 11          JV Partner  

**Client Reference №: GMP-SMD/H2M/636B-06142024**
**Reference NCNDA #: GMP/SMD-NCNDA-06142024**
**JVA NUMBER/NAME: GMP SMD HAPPY2MN**

**Legal Title to the Joint Venture.** The Joint Venturers agree that the legal title to the Joint Venture property and assets, including the Joint Venture itself, shall remain in the name of the Joint Venture, unless the assets are sold.

**Transfers Of Joint Venturers' Interests.** Except as otherwise expressly permitted herein, no Joint Venturer may sell, transfer, assign or encumber its interest in the Joint Venture, or admit additional Joint Venturers, without the prior written consent of the other Joint Venturer. Any attempt to transfer or encumber any interest in the Joint Venture in violation of this Section shall be null and void.

The obligations and Rights of Transferees are as follows:
  (a) Any person who acquires in any manner whatsoever any interest in the Joint Venture, irrespective of whether such person has accepted and adopted in writing the terms and provisions of this Agreement, shall be deemed by the acceptance of the benefit of the acquisition thereof to have agreed to be subject to and bound by all the obligations of this Agreement that any predecessor in interest of such a person was subject to or bound by;
  (b) The person acquiring an interest in the Joint Venture shall have only such rights, and shall be subject to all of the obligations, as are set forth in this Agreement; and, without limiting the generality of the foregoing, such a person shall not have any right to have the value of its interest ascertained or receive the value of such interest or, in lieu thereof, profits attributable to any right in the Joint Venture, except as herein set forth.

**Termination.** Upon the termination or dissolution of the Joint Venture, the Joint Venturers shall proceed to liquidate the Joint Venture, and all proceeds of such liquidation shall be applied and distributed in the manner set above according to the interests held by each party in the Joint Venture. A reasonable time shall be allowed for the orderly liquidation of the Joint Venture's assets in order to minimize losses normally attendant upon such liquidation.

**Notice.** Any notices to be given under this Agreement by either party to the other may be effected either by personal delivery in writing or by mail, registered or certified, postage prepaid with return receipt requested and or email with proof of confirmation of email receipt. Mailed notices must be addressed to the addresses of the parties as they appear in the introductory paragraph of this Agreement. Each party may change its address by written notice in accordance with this paragraph. Notices delivered personally will be deemed communicated as of actual receipt; mailed notices will be deemed communicated as of 30 calendar days after mailing.

**Assignment.** The rights and obligations of either party under this Agreement may not be assigned without prior written consent of the other party.

**Dispute Resolution.** The Joint Venturers will attempt to resolve any dispute arising out of or relating to this Agreement through friendly negotiations amongst the Joint Venturers. If the matter is not resolved by negotiation, the Joint Venturers will resolve the dispute using the below Alternative Dispute Resolution (ADR) procedure.

Any controversies or disputes arising out of or relating to this Agreement will be submitted to mediation in accordance with any statutory rules of mediation. If mediation does not successfully resolve the dispute, the Joint Venturers may proceed to seek an alternative form of resolution in accordance with any other rights and remedies afforded to them by law.

JV Partner     Page 8 of 11    JV Partner 

Client Reference №: GMP-SMD/H2M/636B-06142024
Reference NCNDA #: GMP/SMD-NCNDA-06142024
JVA NUMBER/NAME: GMP SMD HAPPY2MN

**Mediation.** If any controversy or claim arising cannot be agreed upon by the Joint Partners, the controversy or claim shall be resolved by [agreed upon Mediator] ("Mediator"). The Mediator shall decide, resolve, and determine the claim or controversy. The mediator cannot make a finding, ruling, or enter an order that would be in conflict with or prohibited by US regulations, guidance, or information notices governing joint ventures. The written decision of the Mediator shall be final and conclusive upon the Partners. Any ruling or finding by the mediator that amends the joint venture agreement must be with applicable state laws. If not permissible by law such ruling(s) or finding(s) shall have no effect. Judgment on such decision may be entered in the highest court or forum having jurisdiction. While the mediation proceeding is pending, work on the Contract will continue without interruption until completion. The cost of the mediation shall be borne equally between the Joint Partners.

**Miscellaneous Partition.** The Joint Venturers hereby mutually waive any right of partition which they may have with respect to the Joint Venture and any noncash assets of the Joint Venture.

**Professional and Services Fees. SIERRA MADRE DEVELOPMENT, LLC., (SMD),** are required to pay all professional and services fees, including but not limited to brokerage, finder's, intermediaries, consultant or other similar fees in connection with the transactions covered by this Agreement. Global Monetization Partners, LLC., (GMP), is not required to pay any professional and or services fees. Each Joint Venturer hereby agrees to indemnify and hold harmless the other from and against all liabilities, costs, damages and expenses from any breach or alleged breach of the foregoing representation.

**Waiver.** Failure on the part of either Joint Venturer to complain of any act of the other Joint Venturer or to declare the other Joint Venturer in default, irrespective of how long such failure continues, shall not constitute a waiver by such Joint Venturer of its rights hereunder. No waiver of, or consent to, any breach or default shall be deemed or construed to be a waiver of, or consent to, any future breach or default.

**Severability.** If any provision of this Agreement or the application thereof shall be determined by a court of competent jurisdiction to be invalid and unenforceable, the remainder of this Agreement and the application of the other provisions herein contained shall not be affected thereby, and all such other provisions shall remain effective and in force and shall be enforced to the fullest extent permitted by law.

**Binding Effect.** This Agreement shall inure to the benefit of and be binding upon the Joint Venturers, and their heirs, successors and assigns.

**Duplicate Originals.** This Agreement may be executed in duplicate, with each such duplicate to be considered an original for all purposes.

**Construction of Agreement.** (a) The captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision thereof. (b) As used herein, the word "person" shall include the individuals, corporations, partnerships and other entities of any type. In this Agreement, the use of any gender shall be applicable to all genders, and the singular shall include the plural, and the plural shall include the singular.

**Other Activities of Joint Venturers.** Any Joint Venturer may engage in other business ventures of every nature and neither the Joint Venture nor the other Joint Venturer shall have any right in such independent ventures or the income and profits derived therefrom.

JV Partner  SHVHJ          Page 9 of 11          JV Partner ℓℓ   ₥₭

**Client Reference №: GMP-SMD/H2M/636B-06142024**
**Reference NCNDA #: GMP/SMD-NCNDA-06142024**
**JVA NUMBER/NAME: GMP SMD HAPPY2MN**

**Entire Agreement.** This Agreement is intended by the Joint Venturers to be the final expression of their agreement and the complete and exclusive statement of the terms thereof, notwithstanding any representations or statements to the contrary heretofore made.

**Amendments.** This Agreement may be amended by the Parties hereto at any time prior; provided, however, that any amendment must be by an instrument or instruments in writing signed and delivered on behalf of each of the Parties hereto.

**Governing Law; Consent to Personal Jurisdiction.** This Agreement will be governed by the laws of the State of Florida without regard for conflicts of laws principles. Each Joint Venturer hereby expressly consents to the personal jurisdiction of the state and federal courts located in Miami Dade County, Miami, Florida in the State of Florida for any lawsuit filed there against any party to this Agreement by any other party to this Agreement concerning the Joint Venture or any matter arising from or relating to this Agreement.

**In witness whereof, the Joint Venturers have signed and sealed this Agreement.**
Executed by the Joint Venturers named above with the intent of being legally bound.

By: *Stephen Henry Van Hauen, JR* (DocuSigned) Date: 7/18/2024, Place: Edmond, State: Oklahoma
Company Name: SIERRA MADRE DEVELOPMENT, LLC., (SMD)
Name: Dr. Stephen Henry Van Hauen, JR.
Title: Chairman and CEO
Passport Number: 523164402, Country of Issuance: USA,
Issuing Date: October 29, 2014
Expiration Date: October 28, 2024

By: *Luis A. Peralta* (DocuSigned) Date: 7/19/2024, Place: Miami, State: Florida
Company Name: Global Monetization Partners, LLC, (GMP)
Name: Luis A. Peralta
Title: Managing Partner
Passport Number: 642360204, Country of Issuance: USA,
Issue: 15, August 2019
Expire: 14, August 2029

By: (DocuSigned) Date: 7/19/2024, Place: Ashdown, Arkansas
Company Name: Global Monetization Partners, LLC., (GMP)
Name: Dr. Marla LaVoice
Title: Managing Partner
Passport Number: A41331062, Country of Issuance: USA
Issued: 21, June 2024
Expired: 20, June 2034

JV Partner: SHVH                    Page 10 of 11                    JV Partner: LP